Chelsea Knighton v. Benton County et al., 2560383 My schedule here shows Mr. Dambrino first. It has to be done that way, but if you worked it out, please come forward. Thank you, Your Honor. Please support. I'm Robin Dambrino. I represent Benton County and Sheriff Robbie Goolsbee. We are one of the appellants in this matter. Our basis, and I'm going to assume you guys don't want me to go through all the facts, so we will weave them in as you desire. However, our complaint with the lower court's decision is that it was a denial of a motion for summary judgment we filed that was premised in large part on qualified immunity. The order that came forth from the learned district judge did not use that phrase, qualified immunity. There was no obvious analysis of the qualified immunity issue. We submit that there was a clear case that qualified immunity should apply to Sheriff Goolsbee in his individual capacity. The plaintiff, of course, had the burden of showing the violation of a clearly established constitutional right, and I think their argument has always been that there was a false arrest based on a false affidavit. We don't believe there was any analysis in the court below of that issue. It certainly doesn't appear on the face of the order that the court handed down. Well, the court effectively said, I think the court did say, this is a he said, she said, classic he said, she said situation. So the court denied summary judgment, I guess, based on genuine issues of material fact. On a qualified immunity review, which is the only reason we're here, we cannot question the genuineness of factual disputes. So how are we to address what the district court did in the context of our kind of specialized standard of review? Well, Your Honor, it's difficult to do from the face of this order because he did not make specific findings that are tailored to a qualified immunity argument. His he said, she said analysis is, in my opinion, respectfully, sort of a hand wave summary judgment denial. I see factual disputes, he says, and you're correct. It's no second guessing the district judge here, but what we don't see is we don't see any kind of finding or analysis that the plaintiff has established that a constitutional right was violated, first of all. She alleges, she alleges that she was falsely arrested by my client, the sheriff. But allegations are insufficient to rebut a summary. That's not the bar that is set on summary judgment standards. She can't simply allege it. She's got to come forth with substantive probative evidence. Well, do we send this all back? Dear district court, please articulate the factual disputes and apply them per defendant and et cetera and so forth. Or do we do we reach issues here? Your Honor, it would be our position. I mean, I take it what you're inviting us to do is to go to prong two of the qualified immunity analysis and look for clearly established law. But should we do all that when the district court hadn't done it first? Your Honor, it would be our position. And it is that everything you need to make that decision is in the record before you. It has been fully briefed by all sides. And we would suggest a first. Well, first of all, there was a lot more than qualified immunity in the motion summary judgment. It's not addressed by the court. The Eighth Amendment use of force claims. OK, that's for a pretrial detainee. She happily testified under oath unequivocal. One of the few unequivocal things she said was that, no, he didn't. He didn't use excessive force. I'm talking about Sheriff Goolsby. No doubt about it. He did not. So that should be adjudicated, we submit, in favor of Sheriff Goolsby and Benton County as far as that Eighth Amendment excessive use of force claim. The athlete actually concedes in her brief, document 74, page 48, that she's abandoning her First Amendment claims. And that was not addressed in this order either. And it should have been. And I think this court can on appeal. Adjudicate that issue. Do you agree that the county is not properly here, that they need to go back to district court? The county is not properly here. In other words, the county doesn't have any right to an interlocutory appeal. This is a qualified immunity appeal as regard to Ms. Graves, Mr. Ballew, and Mr. Goolsby. It is definitely that, Your Honor, yes. But on what grounds would we have jurisdiction to rule over the county's appeal? Well, the county is thought to be included under 1983 under some policy or practice argument. And we submit that the argument with respect to the false arrest claim. And I haven't gotten that yet. But, I mean, they allege that he made a false affidavit. Yet, that ignores the uncontested fact that he, the sheriff, relied on what he was told by a man who was there, Officer Agent Ballew, that she had failed an opiate blood test or drug test. That's what he was told. He also personally observed her behavior, erratic, combative, non-responsive, and non-compliant in his direction. Mr. Gambino, it seems to me, just following up on what Judge Wilson was asking, it seems to me that, regardless of the sheriff's right to be here, but denial of qualified immunity, and even if that were to be granted and the sheriff, who is the only actor regarding Benton County, who is here, that still doesn't allow Benton County to be here because they have no right to qualified immunity. And that is the basis for this interlocutory jurisdiction. Yes, Your Honor. So it might be the county sort of floating with the sheriff gone, best case for you. But how can we do anything with the county other than just leave that open for the district judge to deal with? Well, I guess my ultimate complaint with regard, you're correct, absolutely, both of y'all are correct, that is a right to assert only in Sheriff Goofy's position. But the 1983 Benton County liability emanates from a policy decision. You're correct. He's not the only county official here. But he, I would submit to you, is about the only policymaker who's here. There's no allegation of any episodic act on the part of him. Rather, it's a broad allegation without any kind of probative evidence below or here that this is a policy or practice of Benton County. So I absolutely agree with you. Benton County doesn't have a right to assert qualified immunity. No, it does not. We just think that their liability below derives from the complaint of conduct on the part of Sheriff Goofy. And that complaint of conduct is simply not established to the level necessary under a summary judgment standard. And, of course, obviously, as to the false arrest claim, that is not established at all. To the contrary, it's overwhelming that he did not falsely arrest her. He had lots of probable cause and has a right to sign an affidavit based on what he observed, what he was told by people on the ground, and he can be wrong on that down the road. I was reading an opinion of Justice Reckless. He said, what was the name? I've got to find that word. Well, counsel, your time is up. No. OK. Yes, sir. All right. I understand. Thank you. Your enthusiasm is not up, but your time is. I appreciate it. Exhausting. I should have said exhausting. Good afternoon. My name is Jessica Malone. I have the pleasure of representing Ms. Kathy Graves today. May it please the court, in addition to the qualified immunity argument for the district court, we argue that for the purposes of 1983 claim, an act of an official not taken with authority of state law or under the cloak of that authority will not be considered under the color of law simply because the individual happened to be a state officer. Or as in this case, we argued Kathy Graves not acting as circuit court or any authority granted to her as the clerk under state law. Well, she may have been outside her official duties as circuit clerk, but is your position that Citizen Graves, not holding a county office, if she called up Officer Ballew and said, hey, could you do this, and she called up Sheriff Goolsbee and said, hey, could you do this, if she wasn't circuit clerk, they would have done what she asked? Yes, Your Honor. And accompanied her and et cetera and so forth? Yes, Your Honor. And it's beyond any issue of law that that's the case? In fact, the district court's recollection of the facts, as Your Honor points to, the circuit clerk getting this call at work about her son being passed out the gas station and under the influence, possibly dead even is her testimony. And she is a frantic, and they say as a concerned mother, she rushes to his aid and death. Well, that's understandable, but she also brought the county sheriff, with whom she's intimately involved in her job description and duties, and she got this state corrections officer to go along with her. Did she know them before? She knew them. Incident to her job duties? Not necessarily pursuant to her job duties. It's mentioned that she and Mr. Ballew are acquainted, but again, Mr. Ballew is a state employee. This is a county official. There's no mention or analysis by the district court on how those two positions would have intersected under Ms. Graves' authority as circuit clerk. What's your understanding of the analysis for under color of law? We have different words that have been used in it. This is the circuit clerk with no duties of law enforcement engaging people she knows to help her out on a family matter. So what's your definition of color of law? How do we know she is or is not operating under color of law? We maintain that the proper analysis should have been the question of whether she, as circuit clerk, used or abused her official power, and there must also be a nexus between the victim, the improper conduct, and the performance. It's not just her official power. People can act beyond acting properly under that power. It seems to me under color of law is somehow trying to get to is there some connection between the action by the public official, which may be outside of her authority, and the authority that she actually exercises, and I'm not hearing any particular definition of that. Isn't this at least the pretense of color of law, which is one of the words that is used in case law? It does seem to me she was throwing her weight around in a medical forical sense to get these other officials to help her. Well, or perhaps this is just a small town where everyone knows everyone. Well, we can do all the perhaps we want to, but it does seem to me her being circuit clerk engaged the sheriff and engaged the parole officer. I don't know if that's color of law or not, but I'm not hearing much to help me in deciding that from you. Well, Your Honor, when we look at her testimony, Mr. Blue's testimony, and the sheriff's testimony, that they were not acting at her direction as circuit clerk, it was the burden of the plaintiff in response to some re-judgment to come forward with some demonstrable evidence as to her material fact here, which she failed to do. And it's her own testimony that's perhaps the most damning to her claims because she's asked, do you know of any conspiracy agreement between the sheriff and Ms. Graves? And she says, I don't know. Do you know why the sheriff would have filed a false affidavit? And she says, I guess because of Kathy, but then admits, I don't know. And then later, she can't point to any evidence that she has that Mr. Blue, the MDOC officer, was acting in sort of at the direction of. It doesn't have to be the direction of, though. Couldn't it just be at the request of? Well, in the district court's order, the court recounts her going to Mr. Blue with her son, who she has been told is intoxicated, for help. And so this wasn't her asking him to make an arrest. She's going to have him help her with her son because he knows. Well, but that led to a drug test of Ms. Knighton. That led to a drug test of Ms. Knighton, according to Mr. Blue, because Ms. Graves' son admits that they had both been using in front of children at home. And that was not at the direction of Circuit Clark, Ms. Graves. You keep using at the direction. I mean, you're not equating under color of law within my statutory job description, are you? I am saying that a mother and grandmother intervening out of concern for her son and her grandchildren took these actions on that day. And it does not mean color of law, necessarily, for her to have called the sheriff when she had reason to believe her daughter-in-law was intoxicated and caring for the children. Any private citizen could and should have with such suspicion called the sheriff under those circumstances. And again, with Mr. Blue, she knew that he had experience with drug addicts and she sought his counsel and help with her son. How did she know that? She knew by virtue of the fact of their jobs. But that, again... I think that gives away the game, does it not? Well, this job, the state MDOC officer and the Circuit Clark don't have job duties that intersect. They just know each other by virtue of their positions and this small county that they live in. I see that my time is up. I was just making sure you had finished answering Judge Wilson's question. Thank you. We have your argument. Thank you. Good afternoon. May it please the Court, Daniel Kim for Officer Steve Blue. Two quick points. First, sovereign immunity bars official capacity claims against Officer Blue because he's a state employee. And second, this is a classic qualified immunity case. On individual capacity claims, he had an objectively reasonable basis to do what he did for the breastfed baby. The father was on drugs and said the mother was passed out from drug use with their small children at home. And it's undisputed that when Officer Blue arrived, the one-year-old baby was not responsive. These are the facts that are clear from the record and grant provide enough in the record for the district court to rule for the Officer Blue and the court should reverse and dismiss all claims against him. Let me ask you about color of law, whether this is even a 1983 issue. Officer Blue is a parole, probation officer, whatever the right terminology is. Does he have general law enforcement powers or is his authority limited to drug tests and other activities directed towards parolees? Yes, he does, Your Honor. So there are two statutes here, Mississippi Code Section 4129.319.6. This is about emergency aid situation. It not only includes emergency aid professionals but also firefighters and the law enforcement officers. And Officer Blue is a certified law enforcement officer. It's a record from 1427. It shows that. And there they have the authority to administer an opioid antagonist. And in order to administer opioid antagonist, you have to figure out, know whether someone needs it. Wouldn't there be authority to administer such for emergency health reasons? This was for, it seems to me, criminal investigation reasons. It is not a criminal investigation context, Your Honor. As you see clearly, Officer Blue was not involved in the arrest. We weren't involved in the arrest, but it seemed the only reason to be testing the plaintiff was to see if, in fact, she had ingested drugs. No, repeatedly in the record and the argument, we make it clear that we were concerned about the baby. Officer Blue was concerned about the baby, potential exposure. My problem with that is if you're concerned about the baby, why don't you just take the baby to see a doctor? Well, the officer. If your concern is about the baby, testing the mother for drugs doesn't do anything to address the concern about the baby, does it? I mean, it would help you identify, well, maybe if she's breastfeeding, then there's a problem because the baby may have ingested some drugs. I mean, is that where you're going with this? Because if his goal is to help the baby, you grab the baby and go to the doc or the hospital. Right, so the hospital. That's not what he did, though. Well, hospital is a good distance away, and Officer Blue did ask Ms. Graves to call the EMT right away, multiple times, reiterated it. And to knowing what this is a split-second matter judgment and knowing what the baby was exposed to, that helps. Even if the EMT arrives right away, if he's able to tell the EMT this is what the baby was exposed to, even if that wasn't entirely accurate, that's still helpful. And so all we're asking for here is there is no clearly established law that makes this kind of conduct clearly unreasonable, and that's the standard. It's objective reasonableness. But the drug test has expired, right? Well, that is what Ms. Knighton claims. And the results of the drug test are nowhere to be found. They're missing. Right. I mean, this actually shows why Officer Blue was not primarily interested in criminal investigation. He didn't even preserve it. Well, but does it show he was sort of acting under color of law and outside the scope of his authority to be part of a conspiracy to fabricate evidence, dispose of evidence? I'm just going with what the plaintiff's allegations are, but you see where I'm going with this. So as our co-appellant mentioned that there was no evidence of conspiracy, but more importantly here, the drug test is not the only operating fact here. Both Robert and Ms. Knighton admitted to fentanyl, at least to Officer Blue and to Sheriff Goolsbee as well, and that's why. And the arrest was really about the fentanyl. That's what Officer Goolsbee says. Well, you say it was really about that and all that sort of thing, but at summary judgment, doesn't that support the district court's conclusion that this is a he said, she said, and they're disputed issues of material fact? There might be disputed issues, but I don't see how that directly undermines the qualified immunity claims for Officer Blue here. He, again, think about the information that he got from the father who lives with the mother said, and he says he used drugs. The mom also used the drugs passed out at home with the child. And then, and then knowing that the, thinking that the baby would be exposed to that drug, what else do we expect the officer to do there other than. Take the baby to the doctor. Right. Yes. If you ask me what else I expect him to do. Right. I mean, that might be a better thing to do your honor, but that is not the standard here. The standard is what is objectively reasonable. And, you know, it, it, it, it, that's all we need. We need here is like, is there a clearly established law that makes this conduct eminently unreasonable on the question will be unreasonable beyond that. And, and no, there isn't any case and plaintiff site, cited no case of that sort. I see my time is up. All right. Thank you. Thank you.  Afternoon, your honors. I think that your honors were kind of hitting the nail on the head, but at least what part of our argument are, when we talk about, I'll start with officer blues and see who's the last one up here. There's a lot of questions we believe with officer blues claims. Now, of course, there's nothing in his report. And he talked about this in his deposition since your honors brought up the baby and the things with that, these claims that the child was non-responsive really doesn't come up until later on in the case. The reason it comes up later on is there's no mention of that until we get to discovery because the report off of our doctor, not doctor, but officer blue makes no mention of a child being allegedly non-responsive, but even if he had the facts kind of undermine the entire setting here. If the claims are that this is a concerned grandmother and concerned law enforcement officer, first off, this all started early in the morning on that day, February 2nd. One of the first problems you'll see is, well, if there's all this concern for the kids as opposed to actually some sort of attempt to undermine Ms. Knighton and her credibility and her relationship with her family, there's a good question as to why in the world did they wait until 2.20 that afternoon to even take the children to the doctor? Because if you look at exhibit I to our summary judgment response, you'll see that the children didn't even get to the doctor until 2.20 that afternoon, which would be three, four, five hours after this entire incident started. Well, so you're more acquainted, well more acquainted than I am with the facts of the case, but we've got to assess what the district court's ruling was, a denial of summary judgment on a qualified immunity summary judgment motion. You'll concede, will you not, the district court did not go defendant by defendant, did not analyze qualified immunity at all, didn't even mention qualified immunity. So what do we do with that? Well, Your Honor, I will concede wholeheartedly that Judge Mills, the district judge, should have analyzed the case, at least use the proper verbiage. I think at the end of the day, his ruling boils down to like he says, it's he said, she said. Well, but it's more than proper verbiage. Our precedent's very clear that you have to assess qualified immunity, the earliest stage of the litigation, and you have to assess it defendant by defendant. And we don't even really have much to review as far as the genuineness of fact disputes or the materiality of the fact disputes. What do we do? Well, I think as Your Honor points out, and I ask the other side here, there's two options. The first is to send it back to the district court for a explanation to better detail. Of course, Your Honors have the opportunity to look at it and make a decision based upon the analysis yourself. Although I think the district court judge being more abreast with the case, both in the motion to dismiss stage, where some of these qualified immunity issues were raised up through the summary judgment stage, would probably be in a better position to analyze exactly what he meant on each step along the way. But when we talk about the analysis and the facts. But do you agree that there are no facts to support that, for example, defendant Graves unlawfully seized the plaintiff? Personally herself?  She didn't go in there and seize, but she was part of the group that did.  but I mean, as far as an unlawful seizure claim against Kathy Graves, there's no evidence to support that claim. Not individually, but as part as the, as has been alleged since. We've got to go individually. In other words, you concede that that claim, I'm not talking about conspiracy. Yes, Your Honor. But what I'm talking about is the actual claim. Same thing with false imprisonment and excessive force. She didn't do either of those things. Not individually,  She didn't use any force at all against Knighton. I'm sorry? She didn't use any force at all against Knighton. She did not. It's our position she directed the actions, which would be part of the, as we have alleged, that the three conspired together at the end of the day to perform these actions. So summary judgment is proper as to at least those three claims against Graves. Well, no, Your Honor. I believe as part of the, and this may be six of one, half dozen of another, but as part of the conspiracy between the three, she would still be caught up in the conspiracy, which the acts of one are the acts of all. And so for each step along the way, she's still responsible. Also, we've got the same, as we argue in our brief, while she's not directly responsible, she failed to intervene as a government official who's there on scene. She's the one who brought Mr. Ballou, or Officer Ballou. Oh, my goodness. She didn't show up as a circuit clerk. She showed up as a mama and grandmama. Well, I disagree that she, You're going to hold her to bystander liability? in a mixed bag type. She is the circuit clerk who's now using her position to, this is not the first daughter-in-law as we put in our brief that she's had issues with. She's, she drove off for another daughter-in-law for another son of hers, as is put in our brief. What she's using is her position as circuit clerk to get Mr. Officer Ballou there in the first place. Their jobs are intertwined. The circuit clerk's office and probation and parole, everything is all in the same office there, or at least the process that goes through. Everybody that they see, everything that they do. So the only reason that they know each other is because of their positions.  counsel has a serious question, at least as to Kathy Gray's, whether 1983 is at all the right tool to be used for color of law. The individual must be performing official duties. They either hew to the line of the authority or overstep it, but still needs to be, it seems to be in the neighborhood of their official duties. And a circuit clerk has no law enforcement duties. It has no drug testing duties. It seems to me, whatever claims you have involving Kathy Graves or state torts. So help me, why this is a color of law insofar as Graves is concerned. Well, because it's her position that gave her position makes her know these people. Her position makes him feel maybe they ought to do what she says, but she's not using the authority of her position. She may be using authority of her relationships or people want to keep them good with her. Is that what color of law means? Well, you're on, I think the go into the USV Dillon, which is a 532 F 33 79, 2008 case. The quote that I have is that dealing with this question is that whether or not Kathy Graves used her official power to facilitate the actions. And granted the circuit power, her power is to, I mean, demean at all circuit clerks power, but it's not to direct law enforcement. Correct. She knows the sheriff. That's the authority she used, but that's the wrong word. That's the influence she used. And I guess, like we would put it, the power of the position. I understand her authority does not grant her these things, but the position or the sway that the position itself holds still allows. So if a federal fifth circuit judge in Oxford, Mississippi tells a law enforcement officer of the state to go do something, is that the color of law of the fifth circuit judge or make it Mike Mills, if you want to, but you just telling them to go do it. And you're an important person, not a fiscal judge, but anyway, a district judge would be an important person. That's color of law. We'd have immunity issues directly with that one, but I'm saying a little bit facetiously, but let's get serious about it. That's not cool of law. That's influence.  That's wanting to keep the judge happy. I agree. But the issue here that I see is these, it all stems from, and perhaps I'm splitting hairs on it. The position provides the power for her to have influence over blue and the sheriff in this situation. And that is where the relationship does. What relationship through the positions I've written. Initially, when we started this case, we look for friendship ties outside of the positions, but they've all, all three testify that they have no relationship outside of being the two of them, elected officials and Steve blue being an officer with MDOC who was in that court. And that's why we tied or believe that they're tied together through the position and the power that it affords Kathy graves. So it really doesn't matter what her position is. It seems to me, she could be transfer clerk. She could be a JP. She could be whatever. And you're saying that's enough for color of law. It's because the same relationships could exist in the same desire to appease or to please the official. Anyway, I think we probably have explored that enough. We know your answer. Well, it's troubling. Well, I, I believe it's troubling that it's, it's an old tale of the South from time to time where people abuse their position, whether the authority is afforded to them or not, they are still swing the stick of the power that it's given to them by the people and puts them in a position to abuse it. And I, and I understand your honor that it may be towards perhaps to deal with what you talk about and what we're dealing with a federal statute that has certain requirements and you may succeed, but I do see this as a, an issue. And, and I, and I agree on, you mentioned the state actions. I do believe regardless, still hold Ms. Gray's potentially liable in the situation for a jury to decide down the road. And I guess I'm just curious. What's your seizure in this case? Well, ultimately what would I constitute the seizure? Well, there's two different ones. One was where Baloo comes in, forcibly takes her to the restroom, seizes her body, takes her to the bathroom, brings her back out, then forcibly holds her on the couch, opens her mouth. I think grips both side of it. So her mouth comes open and swabs the inside of the mouth. And the second would of course be when Sheriff Goolsbee comes along and simply arrest her. So,  so getting the opioid test, you call that a seizure? I guess I think of it as a search, but that's a seizure. Well, no, the process that they used to get the search done was a seizure because he held her down physically, restricted movement and did not allow her to leave and force the test upon her. So I consider that. There's no search. Well, the swab is a separate part of it. She was seized first, swab second, I guess, which would be this unlawful search of her, of her person in that situation. Now we don't know actually whether that was. Are you asserting a claim for search? No, Your Honor, we're not individually for that. But I would point out that of course we have no idea what the test actually said. We just know that when Baloo was doing this process, he made a statement, didn't preserve anything, didn't show it to anybody, just makes a statement as he's in this process. And then in regards to, and from the get go too with Baloo, we've always stated he was not acting of course in scope as an MDOC officer. The state of Mississippi, in our opinion, should really have nothing to do with this. This was all with Benton County and that he was acting at the behest of Benton County officials. And he's even admitted that his role at MDOC, this was all outside that, had nothing to do with it. So from the get go. What do you say to Mr. Kim's citation of some authority that would say that in some context, he does have general law enforcement powers, not so? Well, I don't disagree that law enforcement officers. Talk about him specifically, that he would have that authority under some statutory regime that he cited to us. Are you familiar with that? And do you have any response to that? I don't to the specific statute, but I would say that regardless, he was acting at the behest of Benton County in this situation, not MDOC, which would be the difference between sovereign immunity or not, because this was all just something he undertook on his own. And I think his deposition testimony was quite clear on that as well, that this was not something he was doing as an MDOC officer. He was doing this. It's the only time he's ever done it outside. According to him as an officer for MDOC was this request made by Kathy Graves. So in your mind, it's irrelevant whether or not he was a certified law enforcement office.  In that situation, because he was not acting within the course and scope of that position. He was acting purely because Kathy Graves asked him to. And she had, as we pointed out, has no law enforcement authority, has no direct ability to do anything to direct him. This was purely a Benton County issue. And he was following her request. And then in regards to your honors, in regards to the sheriff in this situation, I think that the law has been clear since at least if we go to the Qualified Immunity Analysis Links, that's where we get into where Judge Mills clearly states. I think that's what he said. She said, truly comes in. He can't make a decision on this. If you were to follow what the defendants or appellants in this case, I would say, yeah, that summary judgment would have been proper. They'd be entitled to immunity. They had all the facts right. But the situation we have here is there are not very many facts that are undisputed. With Sheriff Goolsby, for example, he authored without any investigation, according to Ms. Knighton, the sheriff just shows up, places her under arrest, and that's the end of it when he arrives on the scene that day. Another thing that's really interesting to note for the sheriff, he undertakes, and even he admits this, there was no search for drugs. There was nothing done. He just shows up and arrests her and then files an affidavit, which states under oath that Ms. Knighton was using drugs or narcotics in front of her children. Now, the reason I think that that affidavit is interesting, and he admits that the affidavit he filed would be tantamount to a felony accusation as opposed to potential for misdemeanors. The striking distance under Mississippi law for that is under a misdemeanor, he wouldn't have the authority to show up and arrest her, but under a felony charge, he might. All he has to do then is rely upon potential or evidence that others have provided to him that might lead him to believe that a felony has been committed. And so, and he admitted that he did not have any, he never witnessed Ms. Knighton. I don't believe, I'll have to double check the record. I know someone stated, Mr. Kim stated that Robert Graves allegedly said that they used drugs in front of  but I don't believe that's it. I don't, unless I'm mistaken, I don't believe that was ever the testimony, but I'll have to go back and check. But yet the sheriff chose to use language that he admits he had no knowledge of, and is in fact false, that would give him the authority to make what amounts to a felony arrest, which under statute he could do without a warrant. Whereas with a misdemeanor, had that been the allegation, he would have been forced to have a warrant. So it's a very different situation. And the absence of any investigation by the sheriff, coupled with the fact that as Ms. Graves and Officer Blue were leaving, they say, you're going to be arrested to Ms. Knighton. And then the next person who shows up without investigation is the  And this issue of fabrication of evidence has been, I think as the case law would say, beyond debate since 2015, 2016. Somewhat coming up through this circuit with the Cole cases, many times I think there's ones and twos and it goes back to the district court. But the 14th amendment is very clear and non-debatable that the, an individual like Ms. Knighton should be held accountable based upon fabrication. And I know there's another question of qualified immunity that the appellants have raised several times. But with that question being answered by Cole going back to 2015, as the case law says, the relevant question is whether a reasonable officer could have believed that his conduct was lawful in light of clearly established law and information possessed by him. And in this particular case, Sheriff Goolsby knew full well that you can't make stuff up. I mean, flat for better way to put it. Once all these drug tests were accomplished, there was a drug test done by Ms. Knighton in the jail two days after she's arrested. It was negative. There were two or three others along the way. They've all been negative. The drug test of the children have all been negative. And while that may not go to Officer Goolsby's or Sheriff Goolsby's knowledge or information at the time, it certainly goes, and I know this is not an issue to be decided on summary judgment, but it does bolster for jury's purposes, Ms. Knighton's credibility on the issues. Every time she is denied, I've never said this. I've never said that. I wasn't using drugs. This is all something they've made up. The drug tests do bolster her credibility. And I believe, now this is an employment law case, but it speaks to the evidence. The Rees v. Sanderson plumbing case, which was another case that came through this circuit, went up to the Supreme Court. Ultimately, in that case, the holding points out that if a jury can find both lawful or unlawful motives, that's for the jury to decide based upon the facts of the case. And so in this situation, Your Honor, I believe that Judge Mills got it right. I do believe that as the rules and the case law has stated, there should have been more details provided to the court to detail what facts are in dispute and how does that apply to qualified immunity analysis. But ultimately, the overarching goal or theme, I believe, of this case is the fact that the claim is that the evidence against Ms. Knight was fabricated from day one, which our case law has held for quite some time, would not entitle these defendants to qualified immunity. And that's why this is a jury case. A jury has to decide. Typically, the facts of this case would be better suited, as you would imagine, for a chance to recourt or something along those lines with the dispute between the parties. But unfortunately, the sheriff took it a step further and changed what we were arguing about. So, Your Honor, for those reasons, we ultimately asked the court to affirm, although at the very least would ask that the court send it back to Judge Mills for a better understanding or delineation about the analysis he conducted regarding qualified immunity. All right, Mr. Wade. Thank you. Thank you. Mr. Cooper. Just a brief rebuttal for two minutes. I would like to first address what was last brought up by counsel about the credibility of Ms. Knight and how every drug test she's had since this has all been negative. What he didn't say was none of those drug tests tested for fentanyl. He also said she steadfastly denied that she admitted to using fentanyl. But what he didn't say and what is in the record and was in the record before the judge below was a colloquy between her and Chancery Judge Shackelford in some hearing involving their divorce and custody of their children. It's a footnote in our brief. And the court is asking, I think they're examining a child protective service prison, what was she in jail for? And the witness says for child neglect, which is what she was charged with, not felony fentanyl possession, because the kids were the central concern. Did y'all actually charge her with child neglect? The witness says according to our investigation report, they did. Okay. So then the Chancery Judge turns to Ms. Knight and says, were y'all using drugs together? Talking about her and her husband. She said, yes, sir. What were you using? And she answers, near the end, just heroin and fentanyl, which neither one of them is worth a crap. Question, when you say near the end, are you talking about spring of 21? No, I mean February the 2nd, she says. The day we got taken into custody, that morning. Y'all had used drugs that day, the judge asked? Answer, that was the last day. Question, had you both used? And she said, yes, sir. Now that confirms the lack of credibility that Ms. Knight possesses here. I suggest to the court that they are trying to impose, upon our sheriff here at least, a requirement that he be able to prove absolute guilt at the time of arrest. And that is a procrustean imposition, which the law does not provide for. All of his probable cause is documented, 100%. What we hear from counsel is allegations without substance approbative evidence. My time is up. Questions? Thank you. All right.  To address briefly some of the arguments from counsel, it matters not how reprehensible or disdainful Ms. Knight thinks Ms. Graves' conduct to be, because private wrongful conduct is beyond the reach of 1983. And he mentions conspiracy as being a means by which they could overcome and did overcome summary judgment. But there is nothing in the district court order. There's not one mention in the discussion section of the district court's order that mentions Kathy Graves, or how and what overt act she, by which she engaged in conspiracy with the other defendants. But if she engaged in the conspiracy, if there's enough evidence for that, then there's also enough evidence to defeat summary judgment on the substantive claims? Well, plaintiff herself, when asking her deposition about knowledge and evidence of conspiracy between Kathy Graves and the sheriff, says, I don't know. That's not my question, though. My question is, is if there is a material issue of fact regarding her involvement in a conspiracy, then is summary judgment also improper for the underlying acts, the unlawful seizure, the false imprisonment, the excessive force, et cetera? Well, there has to be an individualized finding that she conspired as to all of the claims. No, I'm not talking about the conspiracy. I'm talking about the underlying actions. In other words, you heard me ask counsel opposite. What evidence was there that Ms. Graves seized Knighton, improperly seized her? There's no evidence. But she's part of the conspiracy to do that. Same with false imprisonment. Same with excessive force. Same with abusive process. No evidence regarding Ms. Graves. But my question is, if she's part of the conspiracy as a matter of law, then is summary judgment also improper with regard to those I would say so. I mean, that's what's so problematic. Summary judgment is also improper. Well, no. I would say that conclusory allegations in response to our motion for summary judgment that she engaged in conspiracy is insufficient to overcome our summary judgment. And, again, when questioned in her deposition, again and again, she said she didn't know of any agreement or conspiracy between Graves and the sheriff. She said she, you know, didn't know of any agreement, as to Mr. Ballew, about the drug testing. Couldn't remember at whose behest the drug testing might have been. It was all conjecture and speculation, which is insufficient to overcome our summary judgment. So we've asked the court to reverse and render in our favor, and alternatively we've asked to remand for our qualified immunity analysis should the court find Ms. Graves is acting under the color of law. Thank you.  Thank you, Ms. Malone. Your Honor, it's on Officer Ballew's authority. First of all, Officer Ballew is not hired by the county. He's hired by the MDOC, and that's the only employer for Officer Ballew. So sovereign immunity applies to the official capacity claims. It doesn't matter under what authority he was acting on. In terms of his authority itself, in addition to the statute I mentioned, 41-29-319, there's another statute. This is more directly on the Division of Community Corrections, 47-7-9-2C. It also talks about vesting all powers of police officer or sheriffs to make arrests or perform any other duties required of policemen or sheriffs. And so there are those, and Officer Ballew actually says he was acting as a certified law enforcement officer in his deposition that's 14-29. And then as far as any sort of suggestion about the expired test and the fabricated evidence, I want to point out that it's a terrible way to fabricate evidence to throw away the drug test in the house, in the trash, of the person being searched or tested. That's paid record evidence, 18-35. And one more point, whether Caesar or search, the same exceptions to Fourth Amendment warrant requirement applies. And then we mentioned the exigent circumstances, in this case, prevent or deal with serious harm, and also this being a community caretaking function, totally divorced from investigation. All right. Is there no further question? We ask the Court to reverse and dismiss all claims against Officer Ballew. Thank you. All right, thanks to all. I know you all wanted more time, but I think we were able to get the gist of your arguments and have been helpful. That is our final argument for this afternoon. We are in recess until tomorrow at 9 a.m. All rise.